Diego GONZALEZ, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 4882.

United States Court of Appeals First Circuit.

Heard Jan. 31, 1955.

Decided July 6, 1955.

Rehearing Denied Aug. 8, 1955.

**432**

Diego Gonzalez, appellant, pro se.

Rubén Rodriguez Antongiorgi, U. S. Atty., San Juan, P. R. for appellee.

Before MAGRUDER, Chief Judge, and BIGGS* and WOODBURY, Circuit Judges.

BIGGS, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Puerto Rico denying the defendant's motion under Rule 35, Fed. Rules Crim.Proc. 18 U.S.C.A., and 28 U.S.C. § 2255 to correct a sentence imposed on him by that court.

On February 12, 1952, Gonzalez, the defendant, pleaded guilty at No. 6649, Criminal, having withdrawn an earlier plea of not guilty, to an indictment charging violations of the narcotics laws. Section 371, Title 18 and Sections 2553(a), 2557(b) (1), Title 26. A journal entry of this date at No. 6649, Criminal, in the court below states: "The plea is accepted. Imposition of sentence is deferred." On July 24, 1952, according to another journal entry, Gonzalez was called for sentence. He moved orally for leave to withdraw his plea of guilty and enter a plea of not guilty, and the court took "the matter under submission until July 28, 1952." On July 29, 1952, according to another journal entry, Gonzalez asked permission to withdraw the oral motion last referred to and requested that his original plea of guilty stand. The court below granted Gonzalez' motion and he reiterated his plea of guilty. This plea was accepted by the court, which then entered an order which stated in part: "It is adjudged that the defendant has been convicted upon his plea of guilty of the offense of conspiring to purchase and sell unstamped narcotic drugs * * *. It is adjudged that the defendant is guilty as charged and convicted." Finding that no pre-sentence report was required and that there was no reason why sentence should not be immediately pronounced on the defendant, the court forthwith sentenced Gonzalez to terms of imprisonment of five years on the first and second counts, the sentences to run consecutively, but on completion of the sentence imposed on the first count the defendant to be placed on probation for the period of the second count.

At various times between May 23rd and June 25th, 1952, while the defendant was on bail at No. 6649, Criminal, he committed other crimes against the narcotic laws. On September 19, 1952, an information was filed against him which contained eight counts pertaining to these offenses, alleging violations of Sections 2550, 2553, 2557(b) (1), 2591(a), and 2596, Title 26. This information was at No. 7039, Criminal, in the United States District Court for the District of Puerto Rico. On the same day Gonzalez entered a plea of guilty to all the counts of the information referred to. On September 19, 1952, another information was filed against the defendant at No. 7039, Criminal, which recited in substance that he was a second offender against the narcotics laws of the United States. The court below then proceeded to sentence Gonzalez pursuant to the provisions of the Act of November 2, 1951, 65 Stat. 767, 21 U.S.C.A. § 174, as a second offender, imposing upon him a term of imprisonment of ten years on the first count of the information and to eight years on each of the other seven counts, all of the sentences to run concurrently with the sentence on the first count. The sentence imposed on the defendant in the second case, No. 7039, Criminal, was to run consecutively "to

---

* Judge Biggs, a circuit judge of the Third Judicial Circuit, was designated to sit in the Court of Appeals for the First Circuit by Mr. Chief Justice Warren.

sentence" imposed on him at No. 6649, Criminal.

The substantial issue presented by the case at bar is whether the court below possessed the power to sentence the offender as a second offender under the Act of November 2, 1951, 21 U.S.C.A. § 174. The Act provides that he who violates the narcotics laws and is found guilty may be fined as specified and shall be imprisoned not less than two or more than five years for the first offense. For a second offense the offender may be fined a specified sum and shall be imprisoned not less than five or more than ten years. For a third or subsequent offense the offender may be fined as specified and shall be imprisoned not less than ten or more than twenty years. The statute provides that: "[A]n offender shall be considered a second or subsequent offender, as the case may be, *if he previously has been convicted of any* [specified narcotics] *offense"*. (Emphasis added.) We must determine, therefore, whether under the statute Gonzalez' prior conviction at No. 6649, Criminal, must have taken place previous to the time of the commissions of the subsequent offenses or only prior to the filing of the information in the second prosecution at No. 7039, Criminal. If the statute means that the commissions of the subsequent offenses must have taken place subsequent to conviction at No. 6649, Criminal, we must then determine whether a guilty plea constitutes a conviction under the statute or whether more is required.

In determining whether under the statute before us the prior conviction must occur before the commissions of the subsequent offenses we must consider the purpose to be achieved by the statute.

In reviewing statutes fixing the penalties for criminal conduct, the Supreme Court has recognized that a variety of purposes may be served by imposing criminal sanctions. In Commonwealth of Pennsylvania ex rel. Sullivan v. Ashe, 1937, 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43, the Supreme Court said that a State "* * * may inflict a deserved penalty merely to vindicate the law or to deter or to reform the offender, or for all these purposes." If the purpose of subsequent offender statutes is to deter criminal conduct, we can see no reason why the increased penalties should not be applied to any subsequent offense whether or not there has been an intervening conviction and sentence since presumably a greater penalty would be required to deter a repetition of criminal activity by an offender who has not been convicted previously than to deter repetition by the offender who has been subjected to the corrective impact of conviction and sentence. If, on the other hand, subsequent offender statutes are intended to reform the offender and deprive him by reason of his incarceration of the opportunity for continued criminal conduct, then such statutes would seem to apply properly only to offenders convicted prior to the subsequent offense, for the repetition of criminal activity after conviction would show the inadequacy of a first-offender penalty to perform this function and the need of increased penalties. If the purpose be "to vindicate the law", as the Supreme Court put it, such statutes apparently would be applicable only to those convicted prior to the later offense because the social demand for increased penal sanctions would be directed primarily at the recidivist and not at an individual who had repeatedly committed offenses condemned by the statute but who had never been brought to the bar of justice.

In upholding the constitutionality of subsequent offender legislation, the Supreme Court has recognized the reformation and retribution theories of punishment as the primary reasons for imposing greater penalties on the repeater. In Moore v. State of Missouri, 1895, 159 U.S. 673, 677, 16 S.Ct. 179, 181, 40 L. Ed. 301, the Supreme Court said, quoting Mr. Chief Justice Shaw in Plumbly v. Commonwealth, 1841, 2 Metc., Mass., 413, 415, that the greater penalties are

justified because "'the former punishment has been inefficacious in doing the work of reform, for which it was designed'" and because the subsequent offense is more reprehensible. See, e. g., McDonald v. Commonwealth of Massachusetts, 1901, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542, and Graham v. State of West Virginia, 1912, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917. But see Note, Court Treatment of General Recidivist Statutes, 48 Col.L.Rev. 238, 244 (1948). Consequently, if reformation and retribution are the primary purposes of the legislation, such ends would be served best by applying the statutes only to those offenders who have been convicted prior to the commission of the subsequent offense.

In construing subsequent offender statutes to determine whether they apply to any subsequent offender or only to an offender convicted and sentenced prior to his current offense, the decisions of the courts have varied depending upon the particular statute involved. In State v. McCormick, 1928, 104 N.J.L. 288, 290, 140 A. 297, 298, where it was held that under the New Jersey statute there did not have to be a prior conviction in order to invoke the increased penalties of the second offender statute, the court ruled the statute operative so long as the "conviction or plea of guilty [for the first offense] took place before the return of the indictment charging a similar offense as a second offense." Conversely, in State v. Christup, 1935, 337 Mo. 776, 85 S.W.2d 1024, where the defendant had escaped from imprisonment on his first offense and committed another offense, it was held that no second offense could occur under the Missouri statute until the defendant's sentence for the first offense had been completely served. Most subsequent offender statutes have been construed to operate between these two extremes so that any offense committed subsequent to a conviction calls for the increased penalty. See Annotation, 58 A.L.R. 20, 41, and 24 C.J.S. Criminal Law, § 1960, p. 1153.

In the United States courts uniformly this has been held to be the rule. In Singer v. United States, 1922, 278 F. 415, the Court of Appeals for the Third Circuit considered a substantially similar statute to that presently before us and held that a second offense within the meaning of the statute could occur only after a conviction for the first offense. See, e. g., United States v. Lindquist, D.C.W.D.Wash.1921, 285 F. 447, and Biddle v. Thiele, 8 Cir., 1926, 11 F. 2d 235. The Court of Appeals for the Fifth Circuit said in Holst v. Owens, 1928, 24 F.2d 100, 101: "It cannot legally be known that an offense has been committed until there has been a conviction. A second offense, as used in the criminal statutes, is one that has been committed after conviction for a first offense. Likewise, a third or any subsequent offense implies a repetition of crime after each previous conviction." Similarly, in Smith v. United States, 9 Cir., 1930, 41 F.2d 215, 217, the court stated: "In order that a conviction shall affect the penalty for subsequent offenses, it must be prior to the commission of the offense."

These precedents, although involving different statutes than that at bar, are helpful in construing the pertinent provision of the statute at bar. That statute, the Act of November 2, 1951, increased the prison terms and fines for narcotics violations in order to deter more effectively such violations and in order to remove those responsible for the illegal drug traffic from their fields of operations for longer periods of time. See Senate Report No. 1051, Oct. 19, 1951, 2 U.S.Code Congressional and Administrative Service 2602, 82nd Cong., 1st Sess.1951. The language defining subsequent offenders was also changed. The prior statute, 50 Stat. 627 (1937), provided that "a person who, after having been convicted * * * [of certain narcotics violations] again * * [violates the narcotics laws] shall, upon conviction of such second offense, be * * * [sentenced as a subsequent of-

fender]." The second offense invoking the increased criminal penalty was thus by express provision of the statute limited to instances where the subsequent offense occurred after conviction. The present statute is not expressly so limited. It provides only that "an offender shall be considered a second or subsequent offender, as the case may be, if he previously has been convicted of any offense" without stating that the conviction must precede the offense. But there is no legislative history to indicate that by this change in language, incident to a general redrafting of the pertinent section of the law, a different definition of second offenders was intended. The Senate Report, accompanying the bill containing the new law and summarizing the changes accomplished by it, stated only that the new law "* * would for the first time provide the increased penalties for second and subsequent convictions [of certain specific violations not encompassed by the old second offender provision]." The report did not indicate that any change in definition was intended. Senate Report No. 1051, supra.

■ Because of the purposes generally to be served by second offender legislation, the judicial interpretation of similar statutes, and the legislative history of this particular statute, we hold that the subsequent offender provision of the Act of November 2, 1951, applies only to narcotics offenders who commit subsequent offenses after convictions. In this case Gonzalez committed his subsequent offenses after the filing of the indictment and the entry by him of a guilty plea. It is necessary, therefore, to determine whether the filing of an indictment and a plea of guilty to its counts constitute a "conviction" within the meaning of the Act.

■ In defining "conviction" it is necessary to note the considerations involved in choosing the event after which increased penalties can be imposed for further criminal conduct. The event utilized should of course serve the underlying purposes of the subsequent offender statutes themselves. Since a greater feeling or reprehension for a repetition of serious crimes usually follows after there has been a previous determination of guilt, the critical event should encompass a determination or guilt. Since more severe sanctions to prevent a repetition of criminal acts and to attempt a reform of the individual are warranted only after the sanctions for earlier offenses have failed, the event should extend to the acquisition of power by a court to impose sanctions. Consequently, the event utilized as determinative should encompass both the determination of guilt and the acquisition of power to invoke penal sanctions. In criminal proceedings, both of these occur by the time of the court's adjudication of guilt. The event to be workable should also be clearly and easily ascertainable, and an adjudication of guilt, being a traditional legal event, satisfies this requirement. It follows, we think, that an adjudication of guilt should be required in order to constitute a "conviction" within the meaning of the statute.

■ In construing subsequent offender legislation, it has been said that "A statute providing for severer punishment on conviction for second offense is highly penal, and must be strictly construed." United States v. Lindquist, supra, 285 F. at page 448. Consequently, it has generally been observed that "a conviction within the meaning of the habitual criminal statutes * * * imports the element of finality with respect to the judgment or sentence." Annotation, 5 A.L.R.2d 1080, 1083. As to United States courts, in Singer v. United States, supra, 278 F. at page 420, it was said: "The authorities overwhelmingly establish, first, that in the legal sense a conviction is a judgment on a plea or verdict of guilty; [and] second, a second offense, carrying with it a more severe sentence, cannot be committed in law until there has been a judgment on the first". In Schooley v. United States, 8 Cir., 1925, 4 F.2d 767, 769, where it

was held that a plea of guilty did not constitute a conviction within the meaning of a similar subsequent offender statute, the court stated: "It would hardly be contended by anyone that a plea of guilty constituted conviction. We are disposed to think that to say one has been convicted of a named offense is the statement of an ultimate fact and not a legal conclusion. Conviction, as here used, means that one has been legally charged with the commission of a crime, that he has either plead guilty, or being put to trial a verdict of guilty was rendered against him, and judgment thereon. But to say that one has plead guilty to a criminal charge is far from saying that he has been convicted of that charge, because there can be no conviction until the plea or verdict of guilty is followed by judgment and sentence." See, e. g., United States v. Stoddart, D.C.E.D.Pa.1926, 11 F.2d 827, and United States v. Lindquist, supra, 285 F. at page 447. But see Annotation, 5 A.L.R.2d 1080, 1102. Although there are federal cases in which it is said that "a plea of guilty is a conviction in the same sense in which a jury verdict is a conviction", United States v. Scarlata, 3 Cir., 1954, 214 F.2d 807, 809, those statements are made in other contexts and are not pertinent to a determination of the meaning of conviction as used in the subsequent offender statutes.

It is our conclusion, therefore, that under the provisions of the Act of November 2, 1951, a person must at least have been judicially adjudicated guilty of one of the enumerated offenses prior to the commission of a second offense before he can be subjected to the increased penalty for a "second or subsequent offense."[1]

The sentence imposed on Gonzalez at No. 7039, Criminal, was illegally imposed. The order of the court below denying Gonzalez' motion to correct sentence pursuant to Section 2255, Title 28, U.S.C., is reversed in order that the court may vacate the sentence imposed at No. 7039, Criminal and correct the sentence. Since this court clearly has jurisdiction to entertain this appeal, the motion of the United States to dismiss the appeal is denied.

The order of the District Court is vacated and the case is remanded to that Court for further proceedings not inconsistent with this opinion.

MAGRUDER, Chief Judge (concurring).

As regards the first point considered in the opinion of the court, I agree that the second offender provisions of the Act of November 2, 1951, require that the accused must have been "convicted" of an earlier offense prior to the date of the commission of the subsequent offense.

In regard to the second point of the court's opinion, I am more doubtful; it could be plausibly contended that the plea of guilty to the earlier offense, made on February 12, 1952, and accepted by the court as disclosed by the journal

1. Contained in the record at No. 7039, Criminal, in the United States District Court for the District of Puerto Rico, is a photostat of an indictment against one Diego Gonzalez and others filed at No. C 130/131 in the United States District Court for the Southern District of New York charging a conspiracy to violate the narcotics laws. There is also a photostat of an adjudication of conviction of Gonzalez on this indictment on February 16, 1951, and it appears that imposition of sentence was suspended and Gonzalez was put on probation for one day. 18 U.S.C.A. § 3651.

Whether the Diego Gonzalez of the criminal proceeding in the Southern District of New York is the same Diego Gonzalez as at No. 6649 and No. 7039, Criminal, in the United States District Court for the District of Puerto Rico does not appear. It is clear, however, that in the second information filed at No. 7039, Criminal, in the United States District Court for the District of Puerto Rico, no reference whatsoever is made to the New York proceeding. Presuming it to be available under the Act of November 2, 1951 to prove Gonzalez to be a subsequent offender within the terms of the Act, a question which we do not decide, it is not pertinent at this juncture.

entry in the district court as of that date, constituted a "conviction" of the earlier offense within the meaning of the Act. See Kercheval v. United States, 1927, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009. Certainly such a plea of guilty, accepted by the court, was an event which conferred upon the court, without more, the power to impose penal sanctions. But though I am not free from doubt, I do not dissent from the court's conclusion, especially in view of the provision of Rule 32(b) of the Federal Rules of Criminal Procedure that a "judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence." It may be that there is not the requisite finality to a plea of guilty, standing alone, considering the relative ease with which such a plea may be withdrawn, by leave of court, pursuant to a motion filed at any time "before sentence is imposed or imposition of sentence is suspended". Rule 32(d).

I shall only add that as I understand the mandate of this court, appellant's victory may turn out to be a hollow one indeed. In No. 7039, Criminal, the information filed against the accused contained eight counts, each charging a separate offense, to all of which the accused entered a plea of guilty. Thereupon the district court imposed a sentence of ten years on the first count and eight years each on the seven other counts, all of the eight-year sentences to run concurrently with the sentence on the first count. Of course it was a matter of grace that the district court did not choose to impose consecutive sentences. We are vacating the judgment of conviction in No. 7039, Criminal, for lack of power in the district court to impose a second offender penalty in excess of five years' imprisonment. The case therefore goes back to the district court for re-sentence within the limits provided by law as applicable to a first offender. These limits are that, for each of the eight offenses charged in the information, the accused "shall be fined not more than $2,000 and imprisoned not less than two or more than five years." Within these limits, determining the matter of the appropriate sentences *de novo*, it will be within the discretion of the district court to decide whether the sentences shall run concurrently or consecutively.